UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LUIS DE LUNA-RODRIGUEZ and DAVID
CASTANEDA MARTINEZ,

                    Plaintiffs,

    v.

MICHAEL TUSTIN, MIKHALE WILLIAM
TUSTIN, ROXANN TUSTIN, and TUSTIN
INVESTMENTS LLC, a Michigan limited
liability company,

                  Defendants.

Case No. 18-467

Hon. Janet T. Neff

Mag. Judge. Ellen S. Carmody

---

Nakisha N. Chaney (P65066)
Jennifer B. Salvatore (P66640)
SALVATORE PRESCOTT & PORTER
*Attorneys for Plaintiffs*
105 E. Main St.
Northville, MI 48167
(tel.) 248.679.8711
chaney@spplawyers.com
salvatore@spplawyers.com

Jessica Glynn (P81140)
YWCA KALAMAZOO
*Attorney for Plaintiff*
353 E. Michigan Ave.
Kalamazoo, MI 49007
(tel.) 269.345.5595
jglynn@ywcakalamazoo.org

Rebecca L. Strauss (P64796)
Mark S. Wilkinson (P68765)
MILLER JOHNSON
*Attorneys for Defendants*
100 W. Michigan Ave., Ste. 200
Kalamazoo, MI 49007
(tel.) 269.226.2983
strausssr@millerjohnson.com
wilkinsonm@millerjohnson.com

---

**DEFENDANTS' ANSWER**

      Defendants Michael Tustin, Mikhale Tustin, Roxann Tustin, and Tustin Investments LLC

answer Plaintiffs Luis de Luna-Rodriguez and David Castaneda Martinez's second amended

complaint as follows:

PARTIES, JURISDICTION AND VENUE

1.      Plaintiffs Luis de Luna-Rodriguez and David Castaneda Martinez are individuals who reside in Kalamazoo County, Michigan.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

2.      Defendant Michael Tustin ("Tustin") is an individual who resides in Kalamazoo County, Michigan.

**ANSWER:**    Defendants admit the allegations in this paragraph of the complaint.

3.      Defendant Roxann Tustin ("R. Tustin") is Tustin's wife and business partner, who resides in Kalamazoo County, Michigan.

**ANSWER:**    Defendants admit the allegations in this paragraph of the complaint.

4.      Defendant Mikhale William Tustin ("Tustin Jr.") is Tustin's son and business partner and/or agent, who, upon information and belief, resides in Kalamazoo County, Michigan.

**ANSWER:**    Defendants admit that Tustin Jr. resides in Kalamazoo County.  Defendants deny

the remainder of the allegations in this paragraph of the complaint.

5.      Defendant Tustin Investments LLC ("Tustin Investments") is a domestic limited liability company with its principal place of business in Kalamazoo County, Michigan.

**ANSWER:**    Defendants admit the allegations in this paragraph of the complaint.

6.      The events and omissions giving rise to this complaint occurred at various locations within Kalamazoo County, Michigan.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

7.     The Court has original jurisdiction over Plaintiffs' federal human trafficking claims under 28 U.S.C. § 1331 and 18 U.S.C. § 1595.

**ANSWER:**     Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.

8.     The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

**ANSWER:**     Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.

9.     Venue is in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

**ANSWER:**     Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.

### GENERAL ALLEGATIONS

***Plaintiff Luis de Luna-Rodriguez***

10.     Plaintiff de Luna-Rodriguez is a Mexican national who was born into an impoverished Mexican community.

**ANSWER:**     Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.

11.     Starting at the age of six, de Luna-Rodriguez had to work to help support his family, which often lacked sufficient food to eat.

**ANSWER:**     Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.

12.     Initially, de Luna-Rodriguez worked after school and on Saturdays.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.


13.    However, when he was 13 years old, de Luna-Rodriguez stopped going to school
to work full-time.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.


14.    Shortly thereafter, de Luna-Rodriguez's father fell ill and was unable to work,
leaving Plaintiff and several uncles to support the family.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.


15.    For many years, de Luna-Rodriguez worked for his father and family in Mexico,
often working more than one job.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.


16.    In 2009, De Luna-Rodriguez traveled to the United States and eventually moved to
Kalamazoo, Michigan, where he resided with his uncle.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.


17.    Shortly after arriving in Kalamazoo, de Luna-Rodriguez was introduced to
Defendant Michael Tustin.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

18.     Tustin owns, renovates and rents multiple properties ("real estate enterprise") within the State of Michigan.

**ANSWER:**    Defendants admit the allegations in this paragraph of the complaint.


19.     Tustin's real estate enterprise is a family-run, for-profit business in which Defendants participate and operate for the financial benefit of themselves and the Tustin family.

**ANSWER:**    Defendants admit the allegations in this paragraph of the complaint.


20.     During the relevant time, Tustin owned properties, handled financial matters, and, among other things, recruited, paid, transported, directed and supervised workers as part of the enterprise.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.


21.     R. Tustin owned properties, handled financial matters, paid workers, transported workers, and was present at worksites as part of the enterprise.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.


22.     Tustin Jr. supervised and directed workers at the worksites as part of the enterprise.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.


23.     Tustin also owns Tustin Investments, which is involved in Tustin's real estate enterprise and is an entity through which Tustin purchases, owns and/or rents property.

**ANSWER:**    Defendants admit the allegations in this paragraph of the complaint.


24.     Tustin offered de Luna-Rodriguez a job performing general home repair and maintenance work, including roof repair and replacement, laminate floor installation, drywall installation, and snow removal.

**ANSWER:**    Defendants admit that de Luna-Rodriguez sometimes performed work on

subcontracts at some of Tustin's job sites, but he did so not as an employee but as an independent

contactor (like the other subcontractors performing their work at the site).  Defendants deny the remaining allegations in this paragraph of the complaint.

25.     Tustin informed de Luna-Rodriguez that his work hours would be 9:00 a.m. to 7:00 p.m., six days a week, Monday through Saturday, with an unpaid one-hour lunch each day.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

26.     Tustin promised, and de Luna-Rodriguez accepted, a starting wage of $10,00 per hour, with the opportunity to increase the hourly wage to $10.50 per hour after two weeks, and to $11.00 per hour after one month, depending on de Luna-Rodriguez's quality of work.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

27.     Tustin told de Luna-Rodriguez that he would be off work for July 4 and Christmas and that on December 22, de Luna-Rodriguez would receive a Christmas bonus.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

28.     Relying on Tustin's representations, de Luna-Rodriguez accepted the job.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

29.     During de Luna-Rodriguez's first several days of employment, Tustin directed him to lay laminate flooring in one home and to remodel and paint a separate property.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

30.     During the first week, de Luna-Rodriguez asked Tustin about the pay date.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

31.     Tustin told de Luna-Rodriguez that there was not a set pay date, but that workers were paid every twelve to fifteen days.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

32.     Over the next couple of weeks, de Luna-Rodriguez continued to work for Tustin, for which Tustin told him he had done a good job and promised him a pay raise.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

33.     At the end of the couple of weeks, de Luna-Rodriguez again asked Tustin when he would be paid.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

34.     Tustin responded that he was not going to pay De Luna-Rodriguez any money, claiming that he missed work days, had poor quality of work, and took too long to complete jobs, causing Tustin to lose rental income.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint, except that the

work Tustin contracted de Luna-Rodriguez to complete often took too long.

35.     Tustin's response shocked de Luna-Rodriguez because Tustin previously complimented his work and promised him a raise.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

36.     Because Tustin did not pay him, de Luna-Rodriguez did not return to work the following Monday.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

37.     When de Luna-Rodriguez did not show up, Tustin came to de Luna-Rodriguez's uncle's trailer, where de Luna-Rodriguez resided, looking for him.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

38.     When he arrived, Tustin pounded on the trailer's windows and doors, screaming that de Luna-Rodriguez needed to get back to work and repeating that he was not paying him for the work that was already done.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


39.     De Luna-Rodriguez feared Tustin, so he stayed in the trailer until Tustin left.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


40.     The following day, de Luna-Rodriguez did not go to work.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


41.     Again, Tustin came to the trailer at which de Luna-Rodriguez was living, looking for him.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


42.     In hopes of deterring Tustin, de Luna Rodriguez's teenage cousin went outside and told Tustin that de Luna-Rodriguez had gone to a different town to work and no longer lived at the trailer.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


43.     Tustin threatened the cousin that if de Luna-Rodriguez did not return to work for him, he would call immigration.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


44.     Tustin also warned that de Luna-Rodriguez would have to pay for rental losses, materials, and time spent by the manager translating for him if he did not come back to work.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

45.     De Luna-Rodriguez, who lacked legal immigration status and feared detention and deportation of himself and his family, returned to work the next day.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

46.     De Luna-Rodriguez also found another place to live to spare his uncle and his family from Tustin's return and any problems that Tustin might cause.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

47.     On de Luna-Rodriguez's return to work, Tustin yelled at him about the money that he lost on a rental.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

48.     However, Tustin also told de Luna-Rodriguez that if he did good work, he would receive an extra dollar an hour.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

49.     After about one and a half months of work, Tustin paid de Luna-Rodriguez for the first time.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

50.     The pay was made by personal check and did not reflect de Luna-Rodriguez's hours worked, pay rate or itemized deductions, in violation of M.C.L. § 408.479(2).

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.  Defendants deny the remaining allegations in this paragraph of the complaint as the Payment of Wages and Fringe Benefits Act does not apply to independent contractors like de Luna-Rodriguez.

51.     Tustin always paid de Luna-Rodriguez by either personal check or cash, never providing information such as the hours worked, pay rate and deductions.

**ANSWER:**    Defendants admit that de Luna-Rodriguez was paid on the subcontracts that he performed.  Defendants deny the remaining allegations in this paragraph of the complaint as the Payment of Wages and Fringe Benefits Act does not apply to independent contractors like de Luna-Rodriguez.

52.     The pay also did not include de Luna-Rodriguez's first ten days of work, nor did it fully compensate de Luna-Rodriguez for the hours he worked thereafter.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

53.     De Luna-Rodriguez often worked Monday through Saturday and occasionally on Sunday.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

54.     Although de Luna-Rodriguez was told that his hours would be 9:00 a.m. to 7:00 p.m., Tustin or his manager frequently required de Luna-Rodriguez to work later, often until 9:00 or 10:00 p.m., and on some occasions, as late as 2:00 a.m.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

55.     Tustin required de Luna-Rodriguez to work at different job sites, to which Tustin and R. Tustin would sometimes transport de Luna-Rodriguez.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

56.     Tustin also made de Luna-Rodriguez perform work for Tustin's friends or family.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

57.     Tustin did not compensate de Luna-Rodriguez for all of his regular hours, nor did he compensate him for the extended hours.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

58.     Tustin also did not compensate de Luna-Rodriguez for time spent on jobs that took longer than Tustin desired, for middle-of-the-night emergency repairs, for snow removal, and for jobs that Tustin directed de Luna-Rodriguez to perform for Tustin's friends or family.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

59.     In addition to not paying full wages, Tustin deducted money from de Luna-Rodriguez's paycheck, without consent, including for lunch time that de Luna-Rodriguez did not take, housing inspection costs, beer, and materials Tustin said were damaged, but for which he did not provide any evidence of damage or cost.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

60.     Tustin made efforts to keep employees from knowing what other workers were being paid.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

61.     Workers were typically paid on different days.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

62.     Tustin also directed de Luna-Rodriguez to not discuss his pay with other workers in violation of M.C.L. § 408.483a.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

63.     De Luna-Rodriguez was paid from a joint bank account belonging to Tustin and his wife, R. Tustin.

**ANSWER:**     Defendants admit the allegations in this paragraph of the complaint.

64.     R. Tustin, who was intimately involved in the real estate enterprise, often wrote and signed de Luna Rodribuez's paychecks, so she was aware that de Luna-Rodriguez was being underpaid.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

65.     R. Tustin was also often present at worksites at which Plaintiff worked and thus witnessed the conditions under which de Luna-Rodriguez labored, including observing Tustin's abusive interactions with de Luna-Rodriguez.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

66.     De Luna-Rodriguez started keeping his own record of hours worked.

**ANSWER:**     Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

67.     The amount of money Tustin paid de Luna-Rodriguez did not compensate him for the number of hours he worked.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

68.     Although de Luna-Rodriguez worked at least 54 hours a week, often more, Tustin only paid de Luna-Rodriguez an average of about $350.00 to $400.00 every two weeks.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

69.     When de Luna-Rodriguez gave Tustin his records to show that he worked more hours than for what he was paid, Tustin tore the records up.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

70.     In addition to illegally withholding wages, Tustin regularly berated, assaulted and threatened de Luna-Rodriguez.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

71.     Tustin constantly derided and hurled racial epithets at de Luna-Rodriguez, including calling him a "son of a bitch," "asshole," "idiot," "wetback" and "pussy."

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

72.     Tustin Jr., who often supervised and directed employees, including de Luna-Rodriguez, was similarly abusive.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

73.     Tustin had angry, violent outbursts in which he would, among other things, kick around equipment, smash a hole in the wall with a hammer, and rip up work with which he was not satisfied with a crowbar.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

74.     Tustin frequently threatened to call immigration or the police on de Luna-Rodriguez and the other Latino workers.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

75.     Tustin reminded Latino employees daily that there was nothing they could do to him because of their immigration status.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

76.     Tustin made comments such as, "What can you do to me?" and "You cannot touch me because I'm allowed to call immigration on you."

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

77.     Tustin also made comments such as, "you are a wetback," you are illegal," and, "I can have you deported whenever I want."

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

78.     Several times when de Luna-Rodriguez tried to quit, Tustin responded with threats, including "Oh, you're going to Mexico?  Don't worry about your ticket, I will call immigration."

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

79.     Tustin did not threaten, abuse, assault or intimidate his Caucasian employees in this manner.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.  Tustin did not

threaten, abuse, assault, intimidate, or otherwise mistreat anybody.


80.     Tustin has friends in the police department who stopped by his job sites to visit.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


81.     Police officers often showed up at job sites to visit and talk to Tustin; no official business was conducted.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


82.     On at least two occasions, Tustin told police officers who came to the job site that workers, including de Luna-Rodriguez, did not have driver's licenses and that the officer should pull them over if he saw them driving.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


83.     On one occasion, a police officer who was friends with Tustin came to the site at which de Luna-Rodriguez was working.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


84.     The officer pulled up in his patrol car, called de Luna-Rodriguez over and asked him if he was a certain person, using de Luna-Rodriguez's first name.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


85.     Tustin's manager walked up and said that the officer was just joking and that he was Tustin's friend.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

- 14 -

86. De Luna-Rodriguez understood the officer's visit to be Tustin's message to him that Tustin had friends on the police force and that de Luna-Rodriguez had no power to report Tustin's abuse.

**ANSWER:** Defendants deny the allegations in this paragraph of the complaint.

87. When police interactions like this occurred, de Luna-Rodriguez and other workers would hide until the manager came and "assured" them that Tustin was just joking.

**ANSWER:** Defendants deny the allegations in this paragraph of the complaint.

88. Tustin intentionally instilled fear of law enforcement as a means to control de Luna-Rodriguez.

**ANSWER:** Defendants deny the allegations in this paragraph of the complaint.

89. Tustin pretended to call immigration on his phone while de Luna-Rodriguez was working.

**ANSWER:** Defendants deny the allegations in this paragraph of the complaint.

90. Terrified, de Luna-Rodriguez grabbed his things and left. He did not return the following day.

**ANSWER:** Defendants deny the allegations in this paragraph of the complaint.

91. Thereafter, as was the pattern, the manager came to get de Luna-Rodriguez, telling him that Tustin was kidding and to get back to work.

**ANSWER:** Defendants deny the allegations in this paragraph of the complaint.

92. De Luna-Rodriguez tried quitting his job multiple times.

**ANSWER:** Defendants deny the allegations in this paragraph of the complaint.

93.     When de Luna-Rodriguez did not show up for work, Tustin came to his house, banged on the door and windows, and threatened him until de Luna-Rodriguez returned to work.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


94.     Tustin also called around to other employers in construction work and disparaged de Luna-Rodriguez, saying that he was a bad worker and did not know what he was doing, so that de Luna-Rodriguez would not be hired.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


95.     Even when de Luna-Rodriguez was sick or there was an emergency, Tustin forced him to return to work.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


96.     After about a year, to get away from Tustin, de Luna-Rodriguez moved to another town and found a job with a restaurant, where he worked for about a year.

**ANSWER:**     Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.


97.     Shortly thereafter de Luna-Rodriguez ran into Tustin's manager who told de Luna-Rodriguez that Tustin was looking for him and wanted him back to work.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


98.     De Luna-Rodriguez responded that he had another job.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


99.     However, Tustin then found de Luna-Rodriguez and directed him to return to work.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

100.     De Luna-Rodriguez, who believed he had no choice, complied.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


101.     Upon his return to work, things quickly reverted to the way they were previously.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


102.     Tustin paid less than $500 for two-week pay periods in which de Luna-Rodriguez worked weekly between 54 and more than 60 hours of back-breaking, exhausting work.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


103.     Tustin continued to be verbally and physically abusive.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


104.     Breaks were mostly disallowed, including lunch, water and bathroom breaks, and workers were not permitted to use the bathroom at Tustin's properties.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


105.     Tustin never provided any type of basic safety gear.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


106.     On one occasion, there was a death at a property. Tustin directed de Luna-Rodriguez to clean up, by hand, blood and skin that was stuck to the floor, using harsh chemicals and without a mop or gloves.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


107.     De Luna-Rodriguez often had cuts and chemical burns on his hands because he did not have protective gear.

**ANSWER:**      Defendants deny the allegations in this paragraph of the complaint.

108.     De Luna-Rodriguez did not want to work for Tustin.

**ANSWER:**      Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

109.     However, Tustin made it clear that de Luna-Rodriguez had to work for him, saying
things such as, "you need to work or I'm going to kick you" or "get to work, motherfucker."

**ANSWER:**      Defendants deny the allegations in this paragraph of the complaint.

110.     Sometimes, Tustin pushed de Luna-Rodriguez down to the floor by his shoulders,
physically forcing him to continue working.

**ANSWER:**      Defendants deny the allegations in this paragraph of the complaint.

111.     As a result of the severe emotional and mental stress of working for Tustin, de
Luna-Rodriguez developed an ulcer, for which he had surgery in August 2016.

**ANSWER:**      Defendants deny the allegations in this paragraph of the complaint.

112.     The day after surgery, Tustin called de Luna-Rodriguez and told him to get back to
work, even though it was not medically safe.

**ANSWER:**      Defendants deny the allegations in this paragraph of the complaint.

113.     On December 17, 2016, de Luna-Rodriguez worked his last day with Tustin.

**ANSWER:**      Defendants deny the allegations in this paragraph of the complaint.

114.     On that day, de Luna-Rodriguez approached Tustin about receiving his paycheck.

**ANSWER:**      Defendants deny the allegations in this paragraph of the complaint.

115.    Tustin, who was intoxicated, became aggressive.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

116.    For about 15 minutes, Tustin pushed and punched de Luna-Rodriguez while de Luna-Rodriguez tried to use his arms to block the blows.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

117.    After the assault, de Luna-Rodriguez left and did not return.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

118.    Tustin tried to force de Luna-Rodriguez to come back to work for him.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

119.    Tustin showed up at de Luna-Rodriguez's home and banged on the door and windows as de Luna-Rodriguez's family hid inside.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

120.    Tustin's intimidation continued for weeks, prompting de Luna-Rodriguez to take protective measures, including, among other things, relocating his family.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

121.    De Luna-Rodriguez continues to live in fear of Tustin.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.

**Plaintiff David Castaneda Martinez**

122.    Plaintiff David Castaneda Martinez was born in Mexico.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.


123.    In 1995, when he was 12 years old, Martinez entered the United States with legal authorization.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.


124.    Martinez's authorization expired while he was still a child.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.


125.    At the age of 15, Martinez was forced to leave school and start working to help support his family.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.


126.    Over the following years, Martinez worked a number of jobs to support himself and his parents, including working as an industrial launderer, greenhouse worker, sprinkler system installer, and custodian.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.


127.    In the summer of 2013, Martinez met Tustin.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.  Defendants

have never met or heard of a person named David Castaneda Martinez and have no understanding

of who this person might be.


128.    Tustin hired Martinez to do construction and building maintenance for his rental
properties, including drywall installation, painting, carpet removal, laminate floor installation and
building maintenance.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.


129.    Tustin told Martinez that he would work five to six days a week, from 9:00 a.m. to
5:00 p.m., for 59.00 an hour.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.


130.    Tustin said he would pay Martinez every two weeks by personal check and, if
Martinez proved he could do the job, Tustin would give him a raise.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.


131.    Martinez's experience working for Tustin was similar to de Luna-Rodriguez's.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.


132.    On his first day, Martinez worked with de Luna-Rodriguez under Tustin's
supervision.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

133.    Tustin frequently made comments telling Martinez to hurry up, including saying, "Come on you piece of shit, I'm paying you money," and "I know you are wetbacks so don't think I'm leaving you alone."

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

134.    Martinez's days started at 9:00 a.m. and did not end until as late as 8:00 p.m.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

135.    Tustin kicked equipment around, called Martinez derogatory and racial names just as he had to de Luna-Rodriguez, including "wetback," "son of a bitch," "asshole," "idiot" and "pussy."

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

136.    Tustin constantly reminded Martinez that there was nothing he could do because of his undocumented immigration status and threatened to call immigration on him and others.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

137.    Tustin would not allow Martinez to take bathroom breaks.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

138.     Tustin did not give Martinez safety equipment, such as knee pads or safety glasses.

**ANSWER:**     Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.


139.     Sometimes Martinez's knees were so swollen that he could not work.

**ANSWER:**     Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.


140.     Often, when Martinez got up from the floor when he was working, Tustin grabbed his face and smacked him back down.

**ANSWER:**     Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.


141.     After the first couple of weeks, Martinez asked for his paycheck.

**ANSWER:**     Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.


142.     Tustin initially said he would pay him the next day, but he did not.

**ANSWER:**     Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.


143.     Martinez asked several more times for his paycheck and got the same answer.

**ANSWER:**     Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.

144.    After the fourth time or so, Tustin told Martinez to "go back to work, you have shit to do. I will pay you later."

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

145.    Tustin later told Martinez that he was not going to pay him at all and there was nothing he could do about it.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

146.    Martinez was fearful of Tustin and believed that he had no choice but to work for Tustin because of Tustin's threats and assaults.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

147.    Martinez was also aware of de Luna-Rodriguez's unsuccessful efforts to quit and Tustin's reaction to them.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

148.    After several weeks, Martinez began having suicidal thoughts.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

149.    After a month or so, Martinez could not take it anymore, and he stopped working for Tustin.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

150.    Martinez hid in his home for weeks after quitting, terrified that Tustin would come to his home and hurt him or his family.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

151.    Tustin attempted to find out from de Luna-Rodriguez where Martinez lived, but de Luna-Rodriguez did not tell him.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

152.    Martinez still fears Tustin and takes steps to avoid running into him.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

153.    As a result of his experience, Martinez was traumatized and experienced significant harm, including suicidal thoughts, anxiety, depression and insomnia.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.

### COUNT I

### FORCED LABOR
*(against Tustin on behalf of both Plaintiffs)*

154.    Plaintiffs incorporate here all previously stated allegations.

**ANSWER:**    Defendants repeat and incorporate their previous answers to the complaint.

155.    The activity at issue in this case touches upon and involves interstate commerce.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

156.    The parties frequently communicated by, among other means, cellular communication, which necessitated, upon information and belief, the use of cellular services and/or transmission equipment originating outside the State of Michigan.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

157.    During the trafficking, Plaintiffs used Hitachi-branded tools, which are developed, manufactured and distributed globally and throughout the United States.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

158.    Plaintiffs also used Dewalt- and Milwaukee-branded tools, which are manufactured outside of Michigan and transported into the state for purchase and use.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph of the complaint and, therefore, deny them.

159.    Tustin required Plaintiffs to perform work under his supervision and direction, or under the supervision and direction of Tustin's agent, for the benefit of Tustin and others.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

160.    The work that Plaintiffs provided had economic value.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

161.    Tustin knowingly provided and obtained Plaintiffs' labor and services by means of force, threat of serious harm, actual harm, physical restraint, threatened abuse of the law or legal process, psychological coercion, fraudulent misrepresentation, and engagement in a scheme or pattern to cause Plaintiffs to believe that they or their families would suffer serious harm.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

162.    Tustin's means of force, fraud and coercion included, but are not limited to, threatening immigration detention and deportation, physical assault and threat of physical assault, reputational harm, misrepresentation of terms of employment, illegal wage withholdings and deductions, and intimidation.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

163.    Plaintiffs suffered substantial physical, emotional, mental and financial harm as a result of Tustin's conduct.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

## COUNT II

### TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT
### LABOR TRAFFICKING
#### (*against Tustin on behalf of both Plaintiffs*)

164.    Plaintiffs incorporate here all previously stated allegations.

**ANSWER:**    Defendants repeat and incorporate their previous answers to the complaint.

165.    Tustin knowingly recruited, transported, obtained and provided Plaintiffs for labor and services by means of force, fraud and coercion, including through threatening immigration detention and deportation, actual physical assault and threat of physical assault, reputational harm, misrepresentation of terms of employment, illegal wage withholdings and deductions, and intimidation.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

166.    Plaintiffs suffered substantial physical, emotional, mental and financial harm as a result of Tustin's conduct.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

## COUNT III

### TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT
### BENEFITING FROM TRAFFICKING VENTURE

- 27 -

(*against all Defendants on behalf of both Plaintiffs*)

167.   Plaintiffs incorporate here all previously stated allegations.

**ANSWER:**   Defendants repeat and incorporate their previous answers to the complaint.

168.   Tustin's real estate enterprise constitutes a "venture" within the meaning of the term in 18 U.S.C. § 1595(a).

**ANSWER:**   Defendants deny the allegations in this paragraph of the complaint.

169.   The venture, through Tustin, engaged in forced labor and labor trafficking in violation of 18 U.S.C. § 1589 and 18 U.S.C. § 1590.

**ANSWER:**   Defendants deny the allegations in this paragraph of the complaint.

170.   Defendants knowingly received financial benefits and things of value from participating in a venture that they knew involved forced labor and trafficking, including wage deductions and withholdings, as well as the increased rental value arising from Plaintiffs' labor and services.

**ANSWER:**   Defendants deny the allegations in this paragraph of the complaint.

## COUNT IV

### MICHIGAN HUMAN TRAFFICKING VICTIMS COMPENSATION ACT
### LABOR TRAFFICKING
(*against Tustin on behalf of de Luna-Rodriguez*)

171.   Plaintiffs incorporate here all previously stated allegations.

**ANSWER:**   Defendants repeat and incorporate their previous answers to the complaint.

172.   In violation of M.C.L. § 750.462b and § 750.462d, Tustin knowingly recruited, enticed, transported, provided and obtained de Luna-Rodriguez for forced labor and services by means of assault, threatened harm, physical restraint, threatened immigration detention and deportation, misrepresentations of employment terms and conditions, illegal wage withholdings and deductions, and engagement in a scheme or pattern to cause Plaintiff to believe that he or his family would suffer serious harm if he did not provide labor.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


173.     As a result of Tustin's conduct, de Luna-Rodriguez suffered serious bodily injury, including an ulcer requiring surgery, as well as substantial financial, emotional and psychological harm.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


## COUNT V

### MICHIGAN HUMAN TRAFFICKING VICTIMS COMPENSATION ACT
### BENEFITING FROM TRAFFICKING ENTERPRISE
*(against all Defendants on behalf of de Luna-Rodriguez)*

174.     Plaintiffs incorporate here all previously stated allegations.

**ANSWER:**     Defendants repeat and incorporate their previous answers to the complaint.


175.     The real estate enterprise constitutes an "enterprise" as defined in M.C.L. § 750.159f.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


176.     The enterprise, through Tustin, engaged in labor trafficking in violation of, among other things, M.C.L. § 750.462b.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.


177.     Defendants knowingly benefitted financially and by receiving things of value from participation in the enterprise, including wage deductions and withholdings, as well as increased rental property value arising from Plaintiffs' labor and services.

**ANSWER:**     Defendants deny the allegations in this paragraph of the complaint.

## COUNT VI

### MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT
### NATIONAL ORIGIN HARASSMENT AND DISCRIMINATION
*(against Tustin on behalf of de Luna-Rodriguez)*

178.    Plaintiffs incorporate here all previously stated allegations.

**ANSWER:**    Defendants repeat and incorporate their previous answers to the complaint.


179.    Plaintiff is a Mexican national.

**ANSWER:**    Defendants lack knowledge and information sufficient to form a belief about the

truth of the allegations in this paragraph of the complaint and, therefore, deny them.


180.    Tustin is Caucasian.

**ANSWER:**    Defendants admit the allegations in this paragraph of the complaint.


181.    Tustin berated, assaulted and otherwise treated de Luna-Rodriguez and other Latino workers differently than he treated Caucasian employees, including with regard to their conditions of employment.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.


182.    Tustin also frequently disparaged Plaintiff and other workers of Latino descent, calling them, among other things, "wetbacks."

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.


183.    Tustin's conduct caused Plaintiff significant harm, including financial, physical, emotional and psychological injury.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

## COUNT VII

### ASSAULT & BATTERY
(*against Tustin on behalf of de Luna-Rodriguez*)

184. Plaintiffs incorporate here all previously stated allegations.

**ANSWER:** Defendants repeat and incorporate their previous answers to the complaint.

185. Tustin attempted to and did intentionally make aggressive, violent and hostile nonconsensual contact with de Luna-Rodriguez or things closely associated with him, including but not limited to, pushing and punching Plaintiff, which caused Plaintiff to fear and suffer imminent harm.

**ANSWER:** Defendants deny the allegations in this paragraph of the complaint.

## COUNT VIII
### WORKFORCE OPPORTUNITY WAGE ACT
### FAILURE TO PAY MINIMUM WAGE AND OVERTIME
(*against Tustin on behalf of de Luna-Rodriguez*)

186. Plaintiffs incorporate here all previously stated allegations.

**ANSWER:** Defendants repeat and incorporate their previous answers to the complaint.

187. At all relevant times, Tustin employed two or more persons.

**ANSWER:** Defendants deny the allegations in this paragraph of the complaint.

188. De Luna-Rodriguez was employed by Tustin on Tustin's premises or at a site designated by Tustin.

**ANSWER:** Defendants deny the allegations in this paragraph of the complaint.

189. In 2015, Michigan's minimum hourly wage rate was $8.15 per hour.

**ANSWER:** Defendants admit the allegations in this paragraph of the complaint.

190.    In 2016, Michigan's minimum hourly wage rate was $8.50 per hour.

**ANSWER:**    Defendants admit the allegations in this paragraph of the complaint.


191.    Tustin failed to pay de Luna-Rodriguez the statutory minimum hourly wage.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.


192.    Tustin violated M.C.L. § 408.413.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.


193.    De Luna-Rodriguez regularly worked in excess of 40 hours per week.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.


194.    Tustin failed to pay de Luna-Rodriguez compensation at the rate of 1 ½ times his promised pay rate for hours worked in excess of 40 hours per week.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.


195.    Tustin violated M.C.L. § 408.414a.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.


196.    De Luna-Rodriguez suffered substantial financial loss as a result of Tustin's conduct.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.


## COUNT IX

### BREACH OF CONTRACT
(*against Tustin on behalf of all Plaintiffs*)

197.    Plaintiffs incorporate here all previously stated allegations.

**ANSWER:**    Defendants repeat and incorporate their previous answers to the complaint.

 

198.    Tustin and de Luna-Rodriguez entered into a contract in which Tustin agreed to pay de Luna-Rodriguez for labor and services a starting wage of S10.00 per hour, with the opportunity to increase the hourly wage to $10.50 per hour after two weeks, and to $11.00 per hour after one month.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

 

199.    Tustin also agreed to pay de Luna-Rodriguez a bonus at Christmas time.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

 

200.    Tustin and Martinez entered into a contract in which Tustin agreed to pay Martinez for labor and services a wage of $9.00 an hour.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

 

201.    Plaintiffs provided the labor and services.

**ANSWER:**    Defendants admit that de Luna-Rodriguez performed work as an independent contractor at some of Tustin's job sites.  Defendants deny that Martinez performed any work at any of Tustin's job sites.

 

202.    Tustin failed to pay Plaintiffs as agreed and otherwise failed to perform his agreed-upon obligations.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

 

203.    Plaintiffs suffered harm as a result of Tustin's breach of contract.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

## COUNT X

### PROMISSORY ESTOPPEL
(*against Tustin on behalf of all Plaintiffs*)

204. Plaintiffs incorporate here all previously stated allegations.

**ANSWER:** Defendants repeat and incorporate their previous answers to the complaint.

205. Tustin made clear and definite promises to pay Plaintiffs a certain wage rate and other compensation.

**ANSWER:** Defendants deny the allegations in this paragraph of the complaint.

206. Tustin did not pay Plaintiffs as promised although he benefitted from their labor and services.

**ANSWER:** Defendants deny the allegations in this paragraph of the complaint.

207. A refusal to enforce Tustin's promise would unjustly sanction a fraudulent and illegal scheme and result in other injustices.

**ANSWER:** Defendants deny the allegations in this paragraph of the complaint.

## COUNT XI

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(*against Tustin on behalf of de Luna-Rodriguez*)

208. Plaintiffs incorporate here all previously stated allegations.

**ANSWER:** Defendants repeat and incorporate their previous answers to the complaint.

209. Tustin intentionally and recklessly inflicted severe emotional distress, which he was certain or substantially certain his conduct would cause.

**ANSWER:** Defendants deny the allegations in this paragraph of the complaint.

210.    Tustin's conduct, which included terrorizing, trafficking and assaulting de Luna-Rodriguez, was extreme, outrageous and exceeded all possible bounds of decency.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

211.    Tustin's conduct is intolerable in any civilized community and it has caused, and continues to cause, Plaintiff severe emotional distress.

**ANSWER:**    Defendants deny the allegations in this paragraph of the complaint.

WHEREFORE, Plaintiffs request that the Court enter an order awarding Plaintiffs all damages to which they are entitled, including but not limited to:

(a)    economic damages, including but not limited to those allowable under 18 U.S.C. § 1595, M.C.L. § 752.983, and M.C.L. § 37.2801;

(b)    noneconomic damages for pain and suffering, *fear,* psychological trauma, severe emotional distress, and other harm, including but not limited to those allowable under 18 U.S.C. § 1595, M.C.L. § 752.983, and M.C.L. § 37.2801;

(c)    punitive damages, including but nor limited to those allowable under 18 U.S.C. § 1595;

(d)    liquidated damages, including but not limited to those allowable under M.C.L. § 408.419;

(e)    attorney fees and costs as allowed under 18 U.S.C. § 1595, M.C.L. § 408.419, M.C.L. § 752.983, M.C.L. §§ 37.2801 and 2802; and all relief that this Court deems just and equitable.

**ANSWER:**    Defendants deny that Plaintiffs are entitled to a judgment in their favor or any of the relief sought in this paragraph or anywhere else in the complaint.  Defendants request that the Court enter a judgment in Defendants' favor and require Plaintiffs to pay the attorney's fees and litigation costs of the Defendants.

### AFFIRMATIVE AND OTHER DEFENSES

1.    Plaintiffs' complaint and the causes of action alleged fail to state a claim upon which relief may be granted because, among other reasons, Defendants did not employ any of the

Plaintiffs.

2.     Plaintiffs' claims may be barred, in whole or in part, by the statute of limitations or other limitations period.

3.     Plaintiffs' claims fail because they voluntarily ended their working relationship with Defendants.

4.     Plaintiffs have failed to allege facts sufficient to allow for award of punitive damages or attorney's fees.

5.     Plaintiffs' claims may be barred, in whole or in part, under the doctrines of waiver, estoppel, laches, or unclean hands.

6.     All actions taken toward Plaintiffs were lawful, proper, reasonable, appropriate, legitimate, non-discriminatory, and were not motivated by unlawful animus.

7.     Any recovery Plaintiffs might receive must be offset by any unemployment benefits, insurance benefits, or other monies or benefits they have received or will receive.

8.     Plaintiffs have failed to make reasonable good faith efforts to mitigate their alleged damages.

9.     Defendants reserve the right to assert additional defenses as they may become known.

MILLER JOHNSON
Attorneys for Defendants

Dated: July 13, 2018                        By _____/s/  Mark S. Wilkinson_____

                                                Mark S. Wilkinson (P68765)
                                                100 W. Michigan Ave., Ste. 200
                                                Kalamazoo, MI  49007
                                                (tel.) 269.226.2983
                                                wilkinsonm@millerjohnson.com

## CERTIFICATE OF SERVICE

I certify that on July 13, 2018, I electronically filed *Defendants' Answer to Second Amended Complaint and Jury Demand* with the Clerk of the Court using the Case Management/Electronic Case Files (CM/ECF) system which will send notification of this filing to the following CM/ECF participants:

Nakisha N. Chaney
Jennifer B. Salvatore
SALVATORE PRESCOTT & PORTER
105 E. Main St.
Northville, MI 48167

Jessica Glynn
YWCA KALAMAZOO
353 E. Michigan Ave.
Kalamazoo, MI 49007

<div align="center" style="margin-top:2em">/s/  Mark S. Wilkinson</div>

MJ_DMS 29803884v2 44663-1